**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:23-cr-00217** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **AHMET NEIDIK,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**OPINION AND ORDER**</u>

This matter comes before this Court on Defendant Ahmet Neidik's Emergency Motion for a Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 59). For the following reasons, Neidik's Motion is **DENIED**.

## I.    INTRODUCTION

On March 7, 2025, this Court sentenced Neidik to eighteen months of imprisonment for conspiracy to commit wire fraud in violation of 18 U.S.C. § 371. (ECF No. 39). Neidik was directed to self-surrender to the custody of the Bureau of Prisons on or before June 6, 2025. (ECF No. 40 at 2). This did not happen. Four days before he was due to turn himself in, Neidik requested and received a sixty-day extension so that he could undergo a prostate biopsy. This Court did so based on its concern that Neidik might need treatment for prostate cancer. (ECF Nos. 45 at 2; 46 at 2). He subsequently received additional extensions of time, from August to December 2025, so that he could receive treatment for gallstones, an umbilical hernia, and acute diverticulitis. (ECF No. 54 at 1–2).

In granting Neidik's final extension of time request, this Court emphasized that it would not grant further extensions of time absent extraordinary reasons to do so, and that diverticulitis

1

was generally an inappropriate reason to seek additional time prior to surrendering. (*Id.* at 2–3). This Court also raised its concern that Neidik would use his various health maladies to simply delay the inevitable. (*See id.* at 3).

Neidik duly reported to the Federal Correctional Institution, Coleman in Sumter County, Florida on December 1, 2025. Three days later, he requested compassionate release from the prison warden. (ECF No. 59 at 3–4). He based his request on his health issues and "poor physical condition," which included his prostate cancer diagnosis,[1] postcholecystectomy syndrome, acute diverticulitis, aortic valve regurgitation, familial hypercholesterolemia, bilateral shoulder calcific tendonitis, and tinnitus. (ECF No. 59-2 at 3–4). The warden denied this request. (ECF No. 59-3 at 1).

On February 9, 2026, Neidik filed the instant Motion, which seeks a modification of his imposed prison term and argues that there exist extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Neidik characterizes his Motion as one for emergency relief. (ECF No. 59 at 1). The Government opposed, and Neidik has replied. (ECF Nos. 60, 61). This matter is now ripe for review.

## II. STANDARD OF REVIEW

A sentencing court "may reduce the term of imprisonment" by granting compassionate release upon a defendant's motion following "the lapse of 30 days from the receipt of [defendant's] request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). For defendants

---

[1] Neidik characterized his diagnosis as being "Gleason 6 prostate cancer." (ECF No. 59-2 at 4). "A Gleason score of 6 is a low-grade cancer." *United States v. McPeek*, 2022 WL 429249, at *4 (N.D. Iowa, Feb. 11, 2022); *see Smith v. Fricke*, 635 F. Supp. 3d 152, 164 n.5, 165 (N.D.N.Y. 2022) (taking judicial notice of the fact that "[t]he Gleason score can range from 6 to 10," and "[t]he higher the Gleason score, the more likely cancer will grow and spread quickly").

under age 70 who have administratively exhausted their remedies, *see United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020), the court must: (1) find that "extraordinary and compelling reasons warrant such a reduction" in the term of imprisonment; (2) consider the applicable sentencing factors that are set forth in 18 U.S.C. § 3553(a); and (3) determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i); *United States v. Bricker*, 135 F.4th 427, 433 (6th Cir. 2025). The defendant bears the burden of showing that the extraordinary and compelling reasons warrant a reduction and persuading the court that the section 3553(a) factors weigh in favor of granting the motion. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc).

These requirements are necessary prerequisites, and the defendant's failure to satisfy any of the three is alone sufficient for denial. Where the defendant fails to satisfy a prerequisite, the court "do[es] not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). And even when all conditions are met, the district court maintains discretion to grant or deny compassionate release. *United States v. Jones*, 980 F.3d 1098, 1101–02, 1106 (6th Cir. 2020) ("[T]he compassionate release decision is discretionary, not mandatory.").

### III. LAW AND ANALYSIS

Neidik has not shown extraordinary or compelling reasons warranting compassionate release. Additionally, the applicable sentencing factors would also weigh against compassionate release. For these two independent reasons, Neidik's Motion fails.[2]

---

[2] Consistent with *Elias*, the Court need not and does not address any Sentencing Commission policy statements.

### A.  Extraordinary and Compelling Reasons

This Court first[3] considers whether extraordinary and compelling reasons warrant a permanent reduction in Neidik's final sentence such that granting compassionate release would be appropriate.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  Neidik bears the burden of establishing the existence of extraordinary and compelling reasons justifying compassionate release.  *United States v. McGrath*, 2021 WL 363548, at *4 (S.D. Ohio Feb. 3, 2021).  Extraordinary and compelling reasons are those that are "unusual, rare, and forceful"—they cannot be "ordinary" or "routine." *McCall*, 56 F.4th at 1055.

Neidik's central argument for compassionate release is that he is a 66-year-old man with multiple medical conditions who is now suffering from prostate cancer.  (ECF No. 59 at 6).  Neidik notes that before his incarceration, his treating physician did not recommend surgery or radiation treatment but placed him on an "active surveillance and treatment plan" that would span eighteen months.  (*Id.*).  Under that plan, Neidik would receive an MRI, a biopsy, have an additional six prostate-specific antigen blood tests, and six digital rectal examinations.  Neidik asserts that his ability to attend these scheduled visits personally is "essential," and that his prison has impermissibly impeded his treatment plan by refusing to allow him to attend a scheduled appointment by teleconference.  (*Id.* at 6–7).[4]  Neidik also argues that the warden's denial of his

---

[3] Normally, this Court would consider, as a threshold matter, whether Neidik has exhausted his administrative remedies, but here the Government concedes that he has.  (ECF Nos. 59 at 5; 60 at 2).

[4] It is unclear whether Neidik may raise this new issue that was not considered by the warden prior to his administrative denial of compassionate release, because Neidik's denied teleconference occurred *after* the warden denied his request, and therefore could not have formed a basis for his requested administrative relief at that time.  *See United States v. Griffin*, 2026 WL 115465, at *2 (S.D. Ohio Jan. 15, 2026) (Marbley, J.) (failing to provide the Bureau of Prisoners with the opportunity to consider a certain argument prior to seeking compassionate release can fail to satisfy the administrative exhaustion requirement); *see Alam*, 960 F.3d at 835.  In this case, however, the

administrative request demonstrates a "medically incorrect" understanding of Neidik's condition that is "dangerous" for his health; he directs the Court to the Bureau of Prisons' apparent failures in treating colorectal cancer before concluding that the Bureau of Prisons is simply unable to treat his prostate cancer adequately.  (*Id.* at 7–8).

The Government counters that surveillance, rather than surgery or radiation, is a viable management option for Neidik's type of cancer that Neidik himself elected prior to his incarceration, as his own medical records show. (ECF Nos. 60 at 3–4; 59-1 at 2).  The Government provides Neidik's custodial medical records, which reflect that Neidik has met with medical staff and has received PSA tests since he entered custody in December 2025.  (ECF No. 60 at 4; *see* ECF No. 60-1).  Neidik replies that his current treatment does not satisfy the adequate standard of care.  (ECF No. 61 at 2, 3–4).

Neidik's arguments fail, and his treatment does not rise to such a level as to provide an extraordinary or compelling reason for compassionate release.  As a general matter, "prostate cancer is not an unusual medical condition in the prison population, and the [Bureau of Prisons] is equipped to treat it and to arrange surgery when required."  *United States v. Lewis*, 2023 WL 4054508, at *2 (S.D.N.Y. June 16, 2023).  Courts routinely reject a prostate cancer diagnosis alone as insufficient to justify compassionate release.  *See United States v. Saccoccia*, 10 F.4th 1, 6 n.5 (1st Cir. 2021).  Neidik has not shown that the treatment of his low-grade prostate cancer, *see* n.1, *supra*, is anything outside of the ordinary or routine approach that would be expected.  Although

---

issue is irrelevant, because even if Neidik could not raise that issue in court prior to seeking administrative relief for it, the Government has waived any challenge to him doing so.  *Alam*, 960 F.3d at 833–34 (mandatory claim-processing rules such as the administrative exhaustion requirement for a compassionate release motion bind courts only when properly asserted and not forfeited or waived).

he asserts that his prostate-specific antigen (PSA) levels have risen beyond the 4.0 ng/ml normal level limit for men over the age of 60, his PSA levels have only risen from 5.08 ng/ml to 6.13 ng/ml, and then to 6.64 ng/ml. (ECF No. 59 at 4). According to Neidik's own source, these levels are considered "minimally elevated," and physicians tend to begin investigating levels that are "over 10 [ng/ml]."[5] Courts agree, finding that PSA levels under 10 ng/ml may merely warrant "further testing and consultation." *Saccoccia*, 10 F.4th at 6; *id.* n.4 (discussing PSA levels of 4.69 ng/ml, 6.6 ng/ml, and 9.76 ng/ml). Surveillance, testing, and consultation are things that the Bureau of Prisons can do, as it has been doing in Mr. Neidik's case. (*See* ECF No. 60-1). Thus, Neidik has not shown that the Bureau of Prisons "cannot adequately manage his care." *United States v. Simmonds*, 2026 WL 554585, at *3 (N.D. Ohio Feb. 27, 2026).

## B. Applicable Section 3553(a) Factors

Finally, although this Court need not address applicable sentencing factors because Neidik has failed to establish the existence of extraordinary and compelling reasons justifying compassionate release, it notes that these factors independently weigh against release.

Again, Neidik mainly challenges the medical care he is receiving in federal custody as insufficient. (ECF Nos. 59 at 10–11; 61 at 4). He believes that he should serve the remainder of his term under house arrest to facilitate his treatment. The Government argues that "ongoing monitoring" is all that is required for Neidik's early-stage prostate cancer at this time. (ECF No. 60 at 5). This Court agrees with the Government. Neidik's alarmist rhetoric aside, it appears that

---

[5] Lisly Chery, M.D., *Prostate-specific antigen (PSA) levels by age: What to know*, Univ. of Texas MD Anderson Cancer Ctr. (Mar. 18, 2024), https://www.mdanderson.org/cancerwise/prostate-specific-antigen--psa--levels-by-age--what-to-know.h00-159695967.html (last visited Mar. 10, 2026); *see* ECF No. 59 at 4 n.1 (citing this article).

6

a treatment primarily focused on monitoring PSA levels is sufficient and appropriate for his prostate cancer.  *See* Section III(A), *supra*; 18 U.S.C. § 3553(a)(2)(D).

The remaining Section 3553(a) factors also demonstrate why Neidik's release would be inappropriate.  As the Government pointed out, Neidik played an important role in a fraud conspiracy that led to a loss of over $50 million to its victims, with Neidik himself pocketing hundreds of thousands of dollars.  (ECF Nos. 60 at 5–6; 59 at 10); *see* 18 U.S.C. § 3553(a)(1). Neidik's sentence was already below the advisory guideline imprisonment range of 24 to 30 months, with this Court varying downwards in Neidik's favor to a term of 18 months because of his age and physical condition.  (ECF No. 41 at 2, 4; *see* ECF No. 60 at 7); *cf. United States v. Cook*, 2022 WL 118185, at *3 (N.D. Ohio Jan. 12, 2022) (finding section 3553(a) factors weighed against reducing sentence based on prostate cancer where the sentencing court already took age and health conditions into account when varying downward).  Neidik has only served a fraction of that time.  *See* 18 U.S.C. § 3553(a)(4).

Additionally, there remains a strong need for Neidik's sentence "to reflect the seriousness of [his] offense, to promote respect for the rule of law, and to provide just punishment," as well as to ensure "adequate deterrence to criminal conduct."  *Id.* § 3553(a)(2)(A), (B).  Indeed, "imposing only home confinement for a white-collar crime would not serve the interests of societal deterrence and that a prison sentence is necessary to provide appropriate punishment, promote respect for the law, and deter others from engaging in similar conduct."  *United States v. Cook*, 2022 WL 18461862, at *2 (6th Cir. Dec. 20, 2022) (citing *Cook*, 2022 WL 118185, at *3).

Taken together, even if the circumstances of Neidik's health were unusual, rare, and forceful enough to constitute extraordinary and compelling reasons for his compassionate release, release would still be improper given the relevant section 3553(a) factors.

## IV. CONCLUSION

Neidik has failed to show that extraordinary or compelling circumstances stemming from his low-grade prostate cancer or minimally elevated PSA levels would warrant a reduction in his sentence. Moreover, the applicable sentencing factors would separately weigh against his release. His Motion is **DENIED**.

**IT IS SO ORDERED.**

_____
**Algenon L. Marbley**
**United States District Judge**

**DATED:  March 19, 2026**